KARDY *v.* SHOOK, J., ET AL.

[No. 324, September Term, 1964.]

STATE *v.* SHERRY

[No. 343, September Term, 1964.]

STATE *v.* SCOTT

[No. 344, September Term, 1964.]

STATE *v.* STULL

[No. 345, September Term, 1964.]

526

*Decided February 15, 1965.*

The cause was argued before PRESCOTT, C. J., and HAMMOND, HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ., and CLAPP, J., Associate Judge of the Sixth Judicial Circuit, specially assigned.

*John W. Sause, Jr., Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General,* and *Robert C. Murphy, Deputy Attorney General,* on the brief, for appellants.

*James R. Miller, Sr.,* for Kathryn J. Shook, Associate Judge, et al., appellees.

*James R. Miller,* with whom were *Miller & Miller* on the brief, for Mark Franklin Sherry, appellee.

*Robert S. Bourbon,* with whom was *Irwin H. Liptz* on the brief, for Charles W. Scott, appellee.

*Alger Y. Barbee* and *William C. Miller* for Charles S. Stull, appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

There are four appeals (Nos. 324, 343, 344, and 345) which will be considered and disposed of in this opinion. This may be done conveniently, because the questions to be determined, with minor exceptions, are, for all practical purposes, the same.

### Appeal 324—Statement of the Case and Its Facts.

The State's Attorney for Montgomery County, in his official capacity and as an individual, filed a petition against Judge Shook, associate judge of the Sixth Judicial Circuit, the clerk of the Circuit Court and the sheriff of Montgomery County. He sought *ex parte* and final injunctions restraining the appellee-defendants from enforcing certain orders passed by Judge Shook.

Counsel for certain defendants (Sherry in Appeal No. 343; Scott in Appeal No. 344; and Stull in Appeal No. 345), who had been indicted by the Grand Jury, filed, in their respective cases, motions for "Discovery and Inspection." At this time, we shall set forth in some detail only what was requested in Sherry's petition (Appeal No. 343) and what relief the court granted as a result thereof, for it will be easier, we think, to follow the differences in the questions involved in the appeals if we state them under separate headings.

Sherry's petition requested "that in accordance with Rule 728 a of the Maryland Rules" he be given, by the State's Attorney, certain information and reports and allowed to make certain inspections. In this petition, he did not specifically seek the opportunity to take the deposition of any witness, but, *inter alia,* asked that the State's Attorney be required to furnish him "with all details of the alleged offenses * * * including, but not limited to: (a) the substance of the testimony to be [adduced] at the trial by Jeanne Virginia Adkins [the prosecuting witness] and all other witnesses whom the State intends to call[1]

1. While the court was considering petitioner's motion for "Discovery and Inspection," his counsel served upon the State's Attorney a "Notice For Taking of Deposition" of Jeanne Virginia Adkins "in accordance with Deposition Rules of the General Rules of Practice and Procedure," and a "Memorandum of Points and Authorities." Without showing any request to amend his motion

\* \* \*." No allegation concerning the necessity or desirability of taking the deposition of any witness was contained in the motion. The only allegation as to why the specific items actually asked for were requested was that the defendant was charged "with \* \* \* serious offenses and the requested discovery and inspection is necessary and vital to the preparation" of his defense. Apparently construing the above as a request by the defendant to take the deposition of the witness Adkins, the trial court, on October 19, 1964, passed an order which granted "the motion of the defense to take the deposition of Jeanne Virginia Adkins." On the following day, similar orders were passed in Appeals Nos. 344 and 345, as we shall see below.

When the petition praying for an injunction, together with its affidavit and exhibits, was presented to Judge Shure, he denied the request for an *ex parte* injunction and signed an order to that effect, Maryland Rule BB 73, and, thereafter, petitioner appealed here. This Court ordered that the appellant's brief in Appeal No. 324 be considered also as appellant's brief in Appeals Nos. 343, 344 and 345. No motion to dismiss this appeal (324) has been filed.

### Appeal No. 343—Additional Statement of the Case and Its Facts.

This is a direct appeal from an order of the trial court, dated October 19, 1964, which granted a defendant below in a criminal prosecution the right to take a pre-trial deposition of the prosecuting witness. The defendant, who is not indigent, was indicted for assault with intent to rape and simple assault, and, over objection by the State's Attorney, the above order was passed.

The appellee contends the order is not one from which an appeal may be taken, because it is interlocutory in nature, and, therefore, the appeal should be dismissed. He further contends that if the merits of his case be reached the trial court had

---

for Discovery and Inspection, petitioner alleges these papers were "filed in the Circuit Court." (He cites no authority, and we know of none, in support of this procedure.) He also fails to show whether these papers were brought to the attention of the trial court. She makes no explicit mention thereof in her opinion or order.

inherent power to pass the order, that he has a constitutional right to take the deposition of witnesses before trial, and the fact that he waived the right to a preliminary hearing before he employed counsel is an additional reason why he should have the right to take the deposition.

Appeal 344—Statement of the Case and Its Facts.

This, too, is a direct appeal from an order of the trial judge. The defendant, charged with manslaughter, filed a motion for discovery, "pursuant to the [Maryland] Rules of Discovery in Criminal Causes," requesting, among other things, the "production of [the] substance of any statement made by any persons other than defendant," and "production of verbatim copy of any statement made by any person other than defendant." No request was made to take the testimony of the State's witnesses, and the only allegation as to why the specific items actually asked for were requested was that "said items sought being material to the preparation of defendant's case * * *." At the time of filing his motion for discovery the defendant also filed a motion for a bill of particulars. The trial court, in her order, stated she had held in the *Sherry* case, *supra,* (Appeal No. 343), that the accused had a right to examine the witnesses for and against him on oath prior to trial, and held that "this right the court holds is available to the defendant herein." No ruling was made on the motion for a bill of particulars. Apparently feeling that the above order granted more relief than was actually requested, the court made no ruling, insofar as the record discloses, upon the other items of relief specifically asked for in the motion for discovery.

The appellee, who is not indigent, contends that "an accused has a fundamental right, under both the State and Federal Constitutions to broad criminal discovery, including the taking of depositions of the State's witnesses," and he, too, advances as one of the reasons he is entitled to this right the fact that he was indicted by the Grand Jury without a preliminary hearing.

Appeal 345—Statement of the Case and Its Facts.

The defendant-appellee herein, who is indigent, is charged in one indictment with armed robbery, attempted armed robbery, robbery and larceny; in another with murder and murder in the

perpetration of a robbery. The indictments were returned by the Grand Jury without a preliminary hearing being held. After indictment, his counsel filed a motion for discovery and inspection "in accordance with [Maryland] Rule 728 a," in which he prayed the discovery of many things. No request was made to take the deposition of any witness, and the only reasons assigned for the discovery requested were that the defendant was charged with "serious offenses and the requested discovery and inspection is necessary and vital to the preparation of the defense * * *."

The trial court ordered the State to furnish certain of the information requested, and took under advisement a "request for the substance of the testimony of the State's witness" to be considered with a similar request in *Sherry, supra.* Thereafter, defendant filed a "Motion to Exclude Evidence," in which he requested a pre-trial hearing with respect to the inadmissibility of certain evidence. His counsel then wrote to the trial court stating that he did not desire "to forclose the possibility of taking depositions," but he did request that any ruling "on the right of this defendant to take [pre-trial] depositions be delayed" until counsel were in a position to "give specific notice to a specific deponent." The State's Attorney furnished all of the information and allowed all of the inspections ordered by the court. This left for consideration only items 2 (f), (g) and (h) of the motion for discovery, which, in essence, requested under (f), "the substance of the testimony to be given at trial of all witnesses" of the State; under (g), the names and addresses of "all persons whom the State" or anyone on its behalf had interviewed or interrogated in connection with the charges against the defendant; and under (h) copies of police and investigators' reports. The court denied the request contained in (g), and granted the right to defendant's counsel to inspect "any reports of the Montgomery County Police relative to the investigation of the alleged offenses." (The State raises no objection here to this portion of the order.)

With regard to the request contained in (f), the court, again apparently feeling that in granting the defendant the right to take the depositions of the State's witnesses was affording him greater relief than he had asked for, stated that he was entitled

to "depose the witnesses who are to appear against him" and, therefore, "it is unnecessary for the court to require the State to furnish [the] substance of the testimony as requested in subsection (f) * * *."

The appellee has filed a motion to dismiss the appeal, assigning the same reasons as those stated in Appeals No. 343 and 344. He also contends that the trial judge's order permitting him to take the deposition of the State's witnesses is sustainable on two grounds: the judge's discretionary power to do so; and appellee's constitutional right under Article 21 of the Declaration of Rights to do so. He further contends that he is being denied his right to a speedy trial.

Consideration and Determination of Appeal No. 324.

There can be little doubt that Judge Shure properly refused the injunction prayed for herein. Although he stated no reason in his order of denial, his action did not necessarily mean that he had arrived at the conclusion that a defendant under indictment has an absolute right to take a pre-trial deposition of the State's witnesses. His reasons were more probably those that we are about to assign as to why his refusal was correct.

The appellees first contend that the State's Attorney neither as an individual nor in his official capacity, has standing to bring an action of this nature, citing, among other authorities, *Bar Assoc. v. District Title Co.,* 224 Md. 474, and 28 Am. Jur., *Injunctions,* § 178. Also compare *Wells v. Price,* 183 Md. 443. Because of what we shall state below, it is unnecessary to decide this point. For the purposes of the case, we shall assume, without deciding, that appellant has standing to maintain the suit.

It has long been recognized that courts of equity, in the exercise of their power to grant injunctive relief, have no superiority over the courts of law. When the jurisdiction of an equity court which pertains to the restraint of judicial proceedings is invoked, the injunction is directed not to the presiding judge of the court, but to the parties litigant, and in no manner denies the jurisdiction of the legal tribunal. An injunction of this nature controls the course of conduct of the person, or persons, to whom it is addressed, and is utilized to prevent him, or them,

from using the process of courts of law where it would be contrary to good conscience to allow the party, or parties, to proceed. This class of injunctive relief is based upon the ground that some unfair advantage is being obtained, or has been obtained, in the law court, which, under the circumstances, equity, alone, can prevent from becoming effective. 1 *High, Injunctions* (4th Ed.), §§ 45-49, and cases there cited; *Daniels v. City of Portland,* 265 P. 790 (Or.); 2 *Story, Eq. Jur.* (14th Ed.), § 1195; 43 C.J.S., *Injunctions,* § 50. Cf. 21 C.J.S., *Courts,* § 501; *Horsey Co. v. Martin,* 142 Md. 52; *Keerl v. Keerl,* 28 Md. 157, 160; *Preston v. Poe,* 116 Md. 1; *Withers v. Denmead,* 22 Md. 135, 146; *Loft, Inc. v. Buckler,* 148 Md. 647.

It would, indeed, be an incongruous and dangerous situation of one Circuit Court judge of this State could paralyze the entire administration of justice in the law courts thereof, both civil and criminal, by way of injunction. And this is not permitted. As stated by *High, op. cit.,* § 46; "* * * a court of equity is devoid of jurisdiction to grant an injunction against the judge of another court to restrain him from acting in or making orders in a particular cause. Every judge is supreme and independent in his own sphere, and cannot be restrained in the discharge of his functions by the process of injunction. While, therefore, equity may in proper cases enjoin suitors in another court from proceeding with their cause, the injunction can not operate upon or run against the judge of such court."

And it necessarily follows from the above (although there is some authority to the contrary) that the clerk and sheriff of the judge's court cannot be restrained from the execution of their duties in carrying out the commands of the processes and the orders of that court. They are the officers who issue and put into force and effect the court's processes and orders. If they should be restrained from executing their duties, it would be tantamount to, and in effect, enjoining the judge. *Tyler v. Hamersley,* 44 Conn. 419; *Jones v. Jones,* 1 Bl. 443, 461; 32 C.J., *Injunctions,* § 479. We, therefore, hold that the action of Judge Shure in denying the injunction was correct.

Consideration and Disposition of Appeals 343, 344 and 345.

In considering and disposing of these appeals it is necessary to determine but one point which is raised in each of them;

namely, are the orders appealed from interlocutory in nature
(and not included in the exceptions contained in Code [1964
Cum. Supp.] Article 5, §§ 1A, 7) and, therefore, not appeal-
able? Code (1957), Article 5, §1; *City of Baltimore v. Moore,*
209 Md. 516. The question is no longer an open one. Ordi-
narily (and certainly in the absence of exceptional circum-
stances), an order of the trial court permitting the taking of
pre-trial depositions is an interlocutory one, and not appeal-
able. *Montgomery Co. Coun. v. Kaslow,* 235 Md. 45. Cf. *Lee
v. State,* 161 Md. 430; *State v. Haas,* 188 Md. 63. Consequently,
all three appeals must be dismissed.[2]

Request by Attorney General For an Expression
of our Views upon the Issues.

If these were ordinary appeals, the above would conclude our
consideration and determination thereof. However, the Attorney
General, because of the nature of the issues involved, has asked
that we express our views thereon. Previous requests of this
nature have been granted in exceptional cases. See, among
others, the cases of *Lee v. State, supra; Walter v. Montgomery
County,* 179 Md. 665; *Penny v. Md. State Police,* 186 Md. 10;
*State v. Haas, supra; Whittle v. Munshower,* 221 Md. 258;
*Bd. of Ed. v. Montgomery County,* 237 Md. 191.

The granting of such requests has usually been based upon
weighty public interest being involved in the issues raised, and
we think the issues herein are of sufficiently great public im-
portance and concern as to justify our granting of the State's
request. For the first time in the history of the State, a judge,
by order, has directed, at the request of indicted defendants, the
taking of pre-trial depositions of the State's witnesses, with-
out the slightest showing, or even pretext, that the depositions
were to be taken pursuant to the authority contained in Mary-
land Rule 727. Such a practice, if sanctioned, would revolu-
tionize the time-honored and well-established criminal proce-

---

2. It will be noted that appellee Scott (Appeal No. 345) made a
claim that the State's action in taking an appeal denied him a
speedy trial. This question, we think, is not properly before us at
this time. The question was not raised, or decided, below; and,
in addition, this is an appeal by the State.

dure of this State. It would put the State to untold expense, not only in indigent cases where the State, in all probability, would be required to bear the expense of transcribing the depositions and allowances for court-appointed counsel's time, but also in non-indigent cases, and additional Assistant State's Attorneys would have to be employed. Moreover, it would prolong the trial of cases on their merits (at a time when most courts are experiencing great difficulty in keeping abreast of their calendars), where defense counsel would constantly attempt to impeach the State's witnesses when their testimony given showed any slight variation from their depositions. In a complex and lengthy trial, such a course might easily confuse a jury and mislead it in the determination of the real issues involved. In addition, it would pose many novel, intricate, and complicated questions when several defendants were indicted jointly. And it is to be noted that another judge of the same circuit as the judge who passed the orders herein has made a ruling diametrically opposed to the orders passed herein. *State v. Monterrey,* Daily Record, December 1, 1964. Although the above is not intended to be a statement of all the reasons as to why the issues involved in these appeals are of grave public concern, we feel it is sufficient to establish that, if permitted to continue, the procedure adopted by the trial court entails pervasive consequences in the administration of the criminal laws of this State.

Mention is made in appellees' briefs that the State's Attorneys of Maryland have displayed no interest in the outcome of these appeals. The answer to the statements, if they have any significance here, is in the record extract, where it is shown that the "State's Attorneys' Ass'n of Maryland unanimously disapproved and rejected" a proposed Rule of Court, which would have permitted, in the discretion of the trial court, the taking of depositions by defendants after the filing of "indictment or information" under certain circumstances.

We proceed to a statement of our views.

### Our Views.

The trial judge based her power and authority to pass the orders upon her "inherent discretionary power [to] allow such

depositions," and the provisions of Article 21 of the Declaration of Rights which state that in all "criminal *prosecutions*" every man has a right, among others that are named, "to be confronted with the witnesses against him" and "to examine the witnesses for and against him on oath." (Emphasis added.) It is conceded, as indeed it must be, that no explicit authority to take pre-trial depositions is contained in any Maryland statute or rule of court, or in the Maryland Constitution. Hence, we may confine our considerations, at least in the main part, to the two grounds named by the trial court, and the claim raised by the appellees that they are entitled to take the depositions under the constitutional guarantees of the Fourteenth Amendment.

Inherent Power of the Trial Court.

In discussing this question, it is not our duty or function to decide what the modern trend[3] of statutory or constitutional provisions with reference to the taking of pre-trial depositions in criminal cases is elsewhere, or what the law with reference thereto may be some day; our function, at this time, is to state our views as to what the law of Maryland is at present.

It will be noted that Maryland Rules 727 and 728 both relate to "Criminal Causes," with Rule 727 applying to "Depositions" and Rule 728 to "Discovery and Inspection" (more will be said of these Rules later). As they apply to criminal causes, "discovery" and "depositions" have different connotations. Discovery has long been one of the working tools of the legal profession. Equity bills of discovery were well known in English Chancery practice and they seem to have had a forerunner in Continental practice. Ragland, *Discovery Before Trial*, pp. 13-16. Discovery suggests the disclosure of facts resting in the knowledge of a party to a suit, or the production of deeds, writings or things in his possession or under his control. *Black's Law Dictionary; Bouvier's Law Dictionary* (Rawle's 3rd Rev.). Depositions, on the other hand, indicate the testimony of a wit-

---

**3.** The "modern trend" argument was flatly rejected by the Supreme Court of New Jersey (opinion by Vanderbilt, C. J.) where a rule of court similar to ours was involved, in State v. Tune, 98 A. 2d 881.

ness reduced to writing, in due form of law, by virtue of a commission or other authority of a competent tribunal, or according to the provisions of some statute law, to be used on the trial of some question of fact in a court of justice. *Bouvier, op. cit.* (Of course, a much wider latitude is permitted in civil proceedings in the taking of depositions for the purposes of discovery or otherwise. Maryland Rules 400-425.) There was recently written of, and concerning, the Federal Rules of Criminal Procedure, from which our Rules 727 and 728 stem, the following:

> "Under the present rules a defendant is given very limited discovery rights. These rights are found in * * * Rule 16 (discovery and inspection) [the counterpart of Maryland Rule 728] * * *. The Criminal Rules, unlike the Civil Rules, have no procedures analogous to depositions, interrogatories or requests for admissions, which are available to the litigants for discovery purposes in a civil case. [This is likewise true of the Maryland Rules.] Rule 15 [the counterpart of Maryland Rule 727], which permits a deposition to be taken when a witness will not be available to testify at trial, is not a discovery device. Its purpose is perpetuation, not discovery, of evidence." Moran, *Federal Criminal Rules Changes: Aid or Illusion for the Indigent Defendant?,* A.B.A.J. (January, 1965).

We have pointed out above, in some detail, the difference between "discovery" and "depositions" as they are used in Maryland Rules 727 and 728, for we shall soon see that Rule 728 (Discovery and Inspection) under subsection c provides that "nothing in this Rule shall limit the inherent common law power of the [trial] court to require or permit discovery," but there is no similar provision in Rule 727 (Deposition). Consequently, it is seen that the "inherent power" referred to in Rule 728 to permit *discovery* (whatever that power may be) does not imply, or even intimate, an "inherent power" to direct the taking of *depositions* of the State's witnesses such as was done in this case. And we shall show below that no such

inherent power has ever existed in the courts of Maryland, nor does it exist today.

In *Young v. State,* 90 Md. 579 (1900), the defendant's request in a criminal case for a commission to take the testimony of a witness, who was unable to appear at his trial, was denied. In ruling upon whether this constituted error, this Court stated:

> "In some of the States of the Union, there are statutes providing for commissions to take the testimony of absent witnesses in criminal cases. In Maryland there are provisions for taking the depositions of absent witnesses in civil cases. But these do not apply in criminal cases, and in such there is no statute or practice in any of the Courts permitting depositions taken by a commissioner to be read as evidence. *There is in this State no inherent power to direct the taking of depositions to be used as evidence.* Whatever power the Courts of law have, is conferred by statute, the provisions of which must be strictly followed." (Emphasis added.)

*Young* was cited, with many other cases, in 1916A Ann. Cases 1066 for the proposition that: "Depositions can be taken * * * in criminal cases only within the limitations of the authority granted by constitutional or statutory provisions or by the concurrent consent of the accused and the prosecution." [4] It

---

4. In addition to the cases there cited see the following: Luxenberg v. United States, 45 F. 2d 497, 498 (C.A. 4), cert. den. 283 U. S. 820; Ex parte Denton, 96 S. 2d 296 (Ala.); Bailey v. State, 302 S. W. 2d 796, 798 (Ark.); Yannacone v. Municipal Court, 34 Cal. Rptr. 838; Kelly v. People, 215 P. 2d 336, 344 (Colo.); McLane v. The State of Georgia, 4 Ga. 335; State v. Zarlenga, 94 Pac. 55 (Idaho); State v. District Court, 114 N. W. 2d 317 (Ia.); People v. Turner, 107 N. E. 162 (Ill.); State of Louisiana v. Fulford, 33 La. 679; State v. Fahey, 35 La. 9; State v. Axilrod, 79 N. W. 2d 677, 680 (Minn.), cert. den. 353 U. S. 938; People v. Restell, 3 Hill (N. Y.) 289; Dickey v. Brokaw, 4 N. E. 2d 411 (Ohio); Parmenter v. State, 377 P. 2d 842, 844 (Okla.); State v. Lamphere, 378 P. 2d 706 (Ore.); Cline v. State, 36 S. W. 1099, 1103 (Tex. Cr.); Setliff v. Commonwealth, 173 S. E. 517, 519 (Va.); Hackel v. Williams, 167 A. 2d 364 (Vt.); State v. Christensen, 242 P. 2d 755 (Wash.) See also, note, 48 Iowa L. Rev. 696.

was also followed by this Court in 1929 in the two cases of *Summons v. State,* 156 Md. at pages 382 and 390. In 1937 in *Sugarman v. State,* 173 Md. 52, the Court dealt with a motion to suppress, before trial, certain of the State's evidence. The Court held there was no statute or precedent that permitted (at that time) such a procedure, and stated the Court could see no reason for "compelling the State's witnesses in advance of trial * * * to disclose to the prisoner the information which they possess pertaining to [the] case * * *." *Sugarman* was followed in *State v. Mariana,* 174 Md. 85.

In 1947, this Court decided the case of *State v. Haas, supra,* 188 Md. 63. The Court there held that the trial court had discretionary power to require the State to furnish counsel for traversers, indicted and awaiting trial, copies of their written confessions which the State had obtained from them. The Court noted that such a power in the trial judge "was not recognized at common law," and that the trial judge did not decide that the defendants were entitled "as a matter of right" to the copies. The Court carefully limited its holding to the facts before it, and concluded that an application for a copy of a confession of an indicted defendant should be left to the sound discretion of the trial court. The opinion did not discuss or consider anything relative to the taking of depositions.

Maryland Rule 727 (Deposition) first became effective on January 1, 1950. It would serve no useful purpose to set forth this Rule and Rule 728 *in toto,* or to trace their history. It will suffice to say that Rule 727 is patterned after Federal Rule 15; Rule 728 after Federal Rule 16. Rule 727 provides, *inter alia,* "if it appears that a prospective witness may be unable to attend or prevented from attending a trial," the court, in its discretion, may permit a deposition of the witness to be taken, which may be used at the trial if "the witness is dead" or under other named circumstances. Rule 728 provides for the discovery and inspection, in the sound discretion of the trial court, by the defendant of certain tangible objects, his obtaining the substance of any oral statement or confession made by him, copies of any written statements obtained from him, and the names and addresses of the State's witnesses intended to be called in chief. Subsection c of this Rule, as we stated above,

states that "nothing in this Rule shall limit the inherent common law power of the court to require or permit discovery." There is nothing in either of the rules that permits the taking, generally, of the depositions of the State's witnesses. When Rules 727 and 728 were last considered by the Standing Committee on Rules of Practice and Procedure before recommending amendments thereto and their final adoption, there was a difference of opinion among the committee members relative to the final draft that should be recommended to the Court for adoption. Some thought that more liberal provisions should be made in Rule 727 for taking the depositions of witnesses; others thought that the Rule, in its present form, was sufficient. In any event, the Committee agreed upon their recommendations which were adopted (at least in the main part) by this Court. It was the considered opinion of the Court, at the time of the adoption of Rule 727, that depositions in criminal cases should only be taken in accordance with the provisions contained therein.

After the adoption of Rule 728, we held in *Whittle v. Munshower*, 221 Md. 258, that allowing discovery and inspection thereunder "is definitely an exception to the general rule," and "even there, the matter is left to the sound discretion of the trial court, and inspection is not granted as a matter of right." See also *Glaros v. State*, 223 Md. 272. And, in *Williams v. State*, 226 Md. 614, we held that where a demand for a bill of particulars went far beyond what was required under Rule 728 and was calculated, not so much to amplify the allegations of the indictment, but "to require complete disclosure by the State of the evidence it relied upon," the court was justified in sustaining the State's exceptions to the demand.

From the above, it is seen that this Court, some sixty-five years ago, flatly stated that "there is in this State no inherent power [in the trial courts] to direct the taking of depositions to be used as evidence [in criminal cases]." And since then, no decision of this Court has deviated therefrom. On the contrary, the holdings of the Court and the rules adopted by it clearly show that the State should not be required to make an indiscriminate disclosure of all its evidence intended to be used in a criminal prosecution. There is no provision in the Con-

stitution or statutes of this State, or in the Maryland Rules that permits or requires the taking of pre-trial depositions of the State's witnesses. Hence, it is our view that the orders directing the taking of the depositions were improvidently issued.

The trial court cites and quotes from the case of *State v. Tune,* 98 A. 2d 881 (N. J., opinion by Vanderbilt, C. J.). That case can hardly be cited in support of the conduct complained of here. There, the Court sustained a part of the trial court's order which denied the defendant's request to inspect certain papers, and reversed that part of the order which permitted inspection of defendant's confession.

In stating what we have above, we do not intimate that the State "owns" the witnesses whom it intends to produce at a criminal prosecution. The defendant and his counsel are at perfect liberty, as they always have been in this State, to interview and interrogate any prospective witness, subject, of course, to the witness' acquiescence in such interrogations. And the defendant and his counsel may take an affidavit from any prospective witness, if the witness be willing. But these matters are entirely different from forcing and requiring a witness to make a pre-trial deposition.

We may add that we have found no State decision which has allowed the taking of pre-trial depositions in criminal prosecutions in the absence of specific authorization by statute or rule. Cf. *State v. Mahoney,* 176 A. 2d 747 (Vt.), where the court permitted the taking of such depositions after the passage of a statute abrogating holding to the contrary in two earlier cases. Also compare 12 Stanford L. Rev. 293, 314.

### Constitutional Contentions.

The remaining questions will not require elaborate discussions. The trial judge held that Article 21 of the Declaration of Rights, wherein it is stated that in criminal prosecutions every man has a right "to examine the witnesses for and against him on oath," gave the traversers the *right* to take pre-trial depositions. The traversers claim that this holding is correct, and, in addition, assert that to deprive them of this right violates the Due Process Clause of the Fourteenth Amendment. In the nearly two hundred years of the existence of Maryland

as a State, this, insofar as the recorded decisions of this Court disclose is the first time that such contentions have been made. We think the answer thereto is readily found in the opinion in the case of *Lanasa v. State,* 109 Md. 602, wherein the Court said: "The object of these provisions [of Article 21 and the Fourteenth Amendment] was to declare and secure the pre-existing rights of the people as those rights had been established by usage and the settled course of law." The Court went on to hold that when a person is accused of crime by a sufficient indictment, and is subjected, like all other persons, to the law in its regular course, neither of the two constitutional provisions mentioned above is violated. We think we have stated enough above to show that the taking of pre-trial depositions in criminal cases was never "a pre-existing right of the people" as established by usage or the settled course of law. See also *Minder v. Georgia,* 183 U. S. 559, where the Court held that the failure of the State law to permit the taking of non-resident witnesses' depositions in criminal cases did not violate the Fourteenth Amendment. Cf. *Leland v. Oregon,* 343 U. S. 790 and *Cicenia v. Lagay,* 357 U. S. 504 (where the refusal to allow inspection of defendant's confessions was held not to deny due process, in the absence of a showing of prejudice) ; *Whittle v. Munshower, supra.*

If the traversers be correct in these contentions, much effort and time of very eminent members of the Bench and Bar have been wasted in promulgating the Rules of this Court and the Federal Rules of Criminal Procedure, for if persons under indictment have a constitutional right to take the pre-trial depositions of the State's witnesses, Rule 727 of this Court and Federal Rule 15 have no meaningful vitality.

### Indictments Without Preliminary Hearings.

The arguments of the traversers under this heading are interesting, but they fail to establish the denial of any right to which they were entitled. They do not contend that there is a requirement in Maryland that an accused be afforded a right to a preliminary hearing before indictment, but argue (although such a hearing was waived by one of them) that if they had had preliminary hearings, they would have been entitled to

cross-examine the State's witnesses; hence, as they had no preliminary hearings, they should be entitled to take the depositions of the State's witnesses.

No preliminary hearing is necessary before indictment, unless required by constitutional or statutory provisions, or by Rule of Court. Although such hearings are widely recognized in the United States, there is no constitutional right thereto, in the absence of specific provision therefor. They are primarily for the benefit of an accused, insuring him against being committed to jail or being required to furnish bail pending grand jury action, unless the State establishes that there is probable cause for maintaining a criminal proceedings against him. Orfield, *Criminal Procedure from Arrest to Appeal,* p. 49, *et seq.* Cf. 1 Stephen, *History of the Criminal Law of England,* pp. 216-233; 14 Am. Jur., *Criminal Law,* §§ 240-248; 22 C.J.S., *Criminal Law,* § 331 *et seq.; Williams v. State,* 214 Md. 143; *DeToro v. Pepersack,* 332 F. 2d 341. Of course, an accused is entitled to cross-examine the State's witnesses at a preliminary inquiry, and there was no denial of such cross-examination here. But if an accused be promptly indicted and no preliminary hearing has been held, no right of the accused has been transgressed, and the adoption by the State of such a procedure affords him no right to take pre-trial depositions of the State's witnesses.

During argument, the Assistant Attorney General indicated that he had had difficulty in deciding what, if any, procedure might properly be adopted to bring the issues involved here before us prior to the taking of the depositions, and thereby possibly rendering the issues moot. He further indicated that he felt an application for a writ of prohibition might have been his proper course to pursue, but believed he was precluded therefrom by the following language in *State v. Haas, supra:* "It is unfortunate that no method is now provided that such a review [of the issues there involved] can be had before trial. In New York, there is a procedure, adopted in the *Lemon* case, *supra [People v. Supreme Court of New York,* 245 N. Y. 24], by which a writ of prohibition was granted, restraining the order of the trial court. In this way the question was raised in the appellate court before trial. We have no such practice in this State * * *."

The statement, we think, unquestionably is *dictum*. No citation of authority was made, and the statement was not elaborated upon. No question concerning a writ of prohibition was briefed, or argued in the briefs of either party to the appeal, and the statement was not necessary to a determination of any question there involved. It was a clear turning away from the main questions of the appeal to express an opinion that it was unfortunate that the appeals therein had to be dismissed, although the Court expressed their views concerning the points involved. In view of the above, we think that the question as to whether or not the writ of prohibition is available in Maryland is an open one.

> *Order in Appeal No. 324 affirmed;*
> *appeals in Nos. 343, 344 and 345*
> *dismissed; all costs to be paid by*
> *Montgomery County.*